# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Terrinoni, : 
                        Petitioner : 
                                  : 
         v.                       : No. 1792 C.D. 2016
                                  : Submitted: March 3, 2017
Workers' Compensation Appeal      : 
Board (Wawa, Inc.),               : 
                        Respondent : 

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                **FILED: April 4, 2017**

Michael Terrinoni (Claimant) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) decision that granted the termination petition filed by WAWA, Inc. (Employer) and denied, for the most part, Claimant's review petition seeking to expand the description of Claimant's accepted work injury. Claimant primarily challenges the bases for the WCJ's credibility determinations. He also challenges the Board's reversal of the WCJ's award of litigation costs. Upon review, we affirm the Board.

## I. Background

Claimant worked for Employer as a "CIP" (or "clean in place") receiver. WCJ's Op., 6/29/15, Finding of Fact (F.F.) No. 9(a). In September 2012, Employer issued a notice of temporary compensation payable (NTCP) for an August 2012 injury described as an "acute left low back strain" that occurred when

Claimant "twisted" in order to connect a hose to a tank. F.F. No. 3. The NTCP subsequently converted to a notice of compensation payable (NCP).

In January 2013, Employer issued a notification of suspension or modification effectively suspending Claimant's wage loss benefits as of January 22, 2013, because Claimant returned to work at earnings equal to or greater than his pre-injury earnings.

In September 2014, Employer filed a termination petition alleging that as of July 23, 2014, Claimant fully recovered from his August 2012 work injury and was able to return to unrestricted work. Claimant filed an answer in which he denied the material allegations.

Also, in December 2014, Claimant filed a review petition in which he alleged, among other things, there was a worsening of his condition and the description of his injury should be expanded to include "trochanteric bursitis, piriformis syndrome, thigh strain, groin strain, herniated disc, lumbar radiculopathy and/or failed back syndrome." WCJ Op. at 1. Employer filed an answer denying the material allegations. However, Employer agreed to expand the description of the injury to include a left thigh strain. A hearing ensued before a WCJ.[1]

---

[1] In January 2015, Claimant filed a claim petition, alleging that after his return to work, he sustained a new injury to his low back on July 18, 2013, in the nature of an aggravation. Ultimately, the WCJ denied Claimant's claim petition, and the Board affirmed. An appeal of the Board's decision is pending before this Court at Docket No. 1353 C.D. 2016.

At the hearing, Claimant testified he worked for Employer as a CIP receiver. On August 22, 2012, he injured his back and left leg when he twisted while hooking up the supply to a machine. He sought medical attention, missed one day of work and returned to light duty work. Claimant worked light duty until January 2013, at which time Claimant returned to his full-duty job in CIP receiving. Thereafter, Claimant continued to perform his full-duty job, but he experienced pain. Claimant began treating with Robert Sing, D.O. (Claimant's Physician), in July 2013. Claimant testified his Physician placed him on light-duty restrictions as of that time. Claimant's Physician referred Claimant to Christian Fras, M.D. (Claimant's Orthopedist), an orthopedic surgeon, who performed surgery on Claimant in December 2013. Claimant did not return to work after the surgery. Claimant's Orthopedist performed a second surgery on Claimant in February 2014. Claimant testified he continues to experience pain, and he does not believe he is capable of returning to full-time work in any capacity.

In support of his review petition and in opposition to Employer's termination petition, Claimant presented the deposition testimony of his Physician, who is board-certified in family practice, sports medicine and emergency medicine. Claimant's Physician first examined Claimant in July 2013. Claimant's Physician initially diagnosed a work-related injury that consisted of lower back pain and left piriformis syndrome with associated left sciatica. He examined Claimant numerous times after Claimant's initial visit, and he observed Claimant's condition change significantly as Claimant underwent two surgeries and Claimant's condition did not improve. Based on his treatment of Claimant for over a year-and-a-half, Claimant's Physician diagnosed a lower back sprain with

3

piriformis syndrome and a meralgia paresthetica. Claimant's Physician also opined that Claimant developed a lumbar disc herniation through the work that he continued to perform and that Claimant's work injury was a substantial contributing factor in his subsequent surgical procedures. As of his most recent evaluation of Claimant, Claimant's Physician diagnosed failed lumbar surgical syndrome, status post fusion, status post L5-S1 disc herniation, left S1 radiculopathy with reflex changes and left piriformis syndrome with associated lumbar strain and sprain. Claimant's Physician opined that Claimant's August 2012 work injury was a substantial contributing factor in these conditions. He also opined Claimant was not capable of returning to his regular duty job, but Claimant could perform sedentary work.

In addition, Claimant presented the deposition of his Orthopedist, a board-certified orthopedic surgeon, who began treating Claimant in November 2013. Claimant's Orthopedist initially diagnosed symptomatic lumbar disc herniation and radiculopathy. Claimant's Orthopedist's ultimate diagnosis was lumbar disc herniation and aggravation of lumbar degenerative disc disease, from which Claimant did not fully recover. Claimant's Orthopedist opined that Claimant's August 2012 work injury was a substantial contributing factor in these conditions. He further opined Claimant could not return to his full-duty job with Employer, but he could work in a sedentary to light-duty capacity initially part-time progressing to full-time work.

Finally, Claimant presented the deposition testimony of Scott Sexton, M.D. (Dr. Sexton), who performed an independent medical examination of

4

Claimant in August 2013. Dr. Sexton diagnosed left hip piriformis syndrome and left hip meralgia paresthetica. He opined that it appeared these diagnoses were related to Claimant's August 2012 work injury.

In support of its termination petition and in opposition to Claimant's review petition, Employer submitted the deposition testimony of Richard Schmidt, M.D. (Employer's Orthopedist), who is board-certified in orthopedic surgery. Employer's Orthopedist examined Claimant on July 30, 2014. Employer's Orthopedist diagnosed a left thigh and lower back strain. He opined that, based on his examination, a review of Claimant's history and his review of medical records and diagnostic studies, Claimant was fully recovered from his work injuries. Employer's Orthopedist did not believe Claimant required additional medical treatment as a result of his work injury.

Ultimately, the WCJ rejected Claimant's testimony as not credible. The WCJ also credited the opinions of Employer's Orthopedist over those of Claimant's doctors. As a result, the WCJ granted Employer's termination petition effective as of the date of Employer's Orthopedist examination in July 2014. Additionally, the WCJ denied Claimant's review petition seeking to expand Claimant's injury description by adding trochanteric bursitis, piriformis syndrome, groin strain, herniated disc, lumbar radiculopathy, and failed back syndrome; however, based on Employer's Orthopedist's testimony the WCJ added a left thigh strain to the recognized injury description. Further, the WCJ awarded Claimant litigation costs of $8,465.29. Claimant and Employer filed cross appeals to the Board.

On appeal, the Board affirmed the WCJ's decision regarding Employer's termination petition and Claimant's review petition. However, the Board reversed the WCJ's award of litigation costs to Claimant. In so doing, the Board determined that Claimant did not prevail on a contested issue in this litigation. To that end, while Claimant prevailed, in part, on his review petition by expanding the injury description to include a left thigh strain, Employer did not dispute that Claimant suffered a work-related left thigh strain. Thus, the Board determined, Claimant was not entitled to an award of litigation costs. Claimant now petitions for review to this Court.

## II. Issues

On appeal,[2] Claimant argues the Board: (1) failed to identify the erroneous "scheme" of the WCJ's decision and improper credibility determinations, resulting in a determination that "could not logically be reached" based on the record as a whole; and, (2) erred in reversing the award of litigation costs. Pet'r's Br. at 2.

## III. Discussion
### A. Credibility Determinations

Claimant first contends the Board failed to apply the correct standard of review. In particular, he asserts a WCJ's decision must be set aside where the conclusions could not logically be reached based on the evidentiary record as a whole. Claimant argues the Board failed to recognize that the WCJ's decision,

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

when considered in conjunction with the evidence as a whole, represented a capricious abuse of fact-finding authority, and that the credibility determinations were based on an improper and illogical scheme.

Specifically, Claimant maintains the WCJ placed undue emphasis on Claimant's employment verification forms, and that the WCJ's erroneous analysis of those forms tainted the WCJ's subsequent credibility determinations of every witness. As a result, Claimant contends "[t]he entire evidentiary record was viewed through a distorted prism, whether consciously or subconsciously." Pet'r's Br. at 11 (Summary of Argument). Claimant argues that, even having rejected Claimant's testimony, the improper credibility determinations regarding the conflicting medical evidence reveals a "*scheme*" that is contrary to the overwhelming weight of the evidence, such that the WCJ's conclusions could not logically have been reached, based on the record as a whole. Id. (emphasis in original).

At the outset, we note, as the ultimate fact-finder in workers' compensation cases, the WCJ "has exclusive province over questions of credibility and evidentiary weight …." A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233, 1238 (Pa. Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness in whole or in part. Id.

"It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." Furnari v. Workers' Comp.

Appeal Bd. (Temple Inland), 90 A.3d 53, 60 (Pa. Cmwlth. 2014) (citation omitted). We examine the entire record to see if it contains evidence a reasonable person might find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the findings must be upheld, even though the record may contain conflicting evidence. Id. Additionally, we must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced from the evidence. Id.

A capricious disregard only occurs when the WCJ deliberately ignores relevant, competent evidence. Capasso v. Workers' Comp. Appeal Bd. (RACS Assocs., Inc.), 851 A.2d 997 (Pa. Cmwlth. 2004). Capricious disregard of evidence "is a deliberate and baseless disregard of apparently trustworthy evidence." Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works), 862 A.2d 137, 144 (Pa. Cmwlth. 2004). "[W]here there is substantial evidence to support [a WCJ's] factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe), 812 A.2d 478, 487 n.14 (Pa. 2002) (emphasis added).

In addition, to satisfy the reasoned decision requirements of Section 422(a) of the Workers' Compensation Act (Act),[3] a WCJ must set forth the rationale for the decision by specifying the evidence relied upon and reasons for accepting it. Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.), 828 A.2d

---

[3] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §834.

8

1043 (Pa. 2003); Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006). When conflicting evidence is presented, the WCJ must adequately explain the reasons for rejecting or discrediting competent evidence. Daniels. The WCJ may not reject uncontroverted evidence without reason or for an irrational reason, but must identify such evidence and adequately explain the reasons for its rejection. Id. "[T]he purpose of a reasoned decision is to spare the reviewing court from having to imagine why the WCJ believed one witness over another." Dorsey, 893 A.2d at 196 (citation omitted).

Further, a WCJ may base a credibility determination solely on a witness's demeanor when the witness testifies live before the WCJ. Daniels. However, "[w]here medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another." Dorsey, 893 A.2d 194. To allow effective appellate review, the WCJ must articulate an objective basis for the credibility determination. Id. at 194-95. Although there are countless objective factors that may support a credibility determination, these factors must be identified and enunciated. Id.

Nevertheless, "Section 422(a) does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations." Id. at 195. "Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." Id.

9

Further, to terminate a claimant's benefits, the employer bears the burden of establishing that either the claimant's disability ceased or that his remaining disability is unrelated to the work injury. Gillyard v. Workers' Comp. Appeal Bd. (Pa. Liquor Control Bd.), 865 A.2d 991 (Pa. Cmwlth. 2005) (en banc). An employer may satisfy this burden by submitting unequivocal, competent medical evidence of the claimant's full recovery from his work injury. Jackson v. Workers' Comp. Appeal Bd. (Res. for Human Dev.), 877 A.2d 498 (Pa. Cmwlth. 2005).

In addition, under Section 413(a) of the Act, 77 P.S. § 771, a WCJ may amend an NCP at any time during litigation of any petition if the evidence shows the injury sustained in the original work incident is different or more expansive than that listed in the NCP.[4] Harrison v. Workers' Comp. Appeal Bd. (Auto Truck Transp. Corp.), 78 A.3d 699, 704 (Pa. Cmwlth. 2013) (citing Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill), 975 A.2d 577, 580-81 (Pa. 2009)). This is known as a "corrective amendment." Id. Additionally, the NCP can be amended if the claimant files a review petition and proves that another injury subsequently arose as a consequence of the original injury. Id. The party seeking to amend the NCP has the burden of proving the NCP is materially incorrect. Id. (citing Namani v. Workers' Comp. Appeal Bd. (A. Duie Pyle), 32 A.3d 850 (Pa.Cmwlth.2011)).

---

[4] Section 413(a) states, in relevant part: "A [WCJ] may, at any time, review and modify or set aside a [NCP] and an original or supplemental agreement ... if it be proved that such [NCP] or agreement was in any material respect incorrect." 77 P.S. §771.

Here, in resolving the termination and review petitions, the WCJ made the following credibility determinations:

a. This [WCJ], having had the opportunity to observe Claimant and his demeanor when he testified at the … hearing, finds the overall testimony of Claimant to be less than credible in the instant dispute. In this matter, Claimant submitted the LIBC 750 and LIBC 760 to Employer asserting that he was not 'self-employed' at any time while receiving workers' compensation benefits. (Defendant Exhibit 09). Yet, Claimant acknowledged that he had, as far back as 2009, been attempting to start a business (Hrg., 3/23/15 at 32), and during the course of the proceedings, Employer submitted into evidence an 'Independent Associate Agreement' Claimant had executed with TVC Marketing Associates, Inc. (Defendant Exhibit 06) as well as another printed web page relating to Claimant concerning another venture Claimant was trying. (Defendant [Exhibit] 10). Although Claimant asserted that he made no income from these ventures, Claimant testified that when he filed his tax returns, he claimed deductions for certain expenses related to the same. (Hrg., 3/23/15 at 33). To this [WCJ], these facts are inconsistent, i.e., an assertion to Employer that one is not self-employed and a claim to the Internal Revenue Service that there are business deductions, i.e., a computer and writing off a home office. In the mind of this [WCJ], the foregoing inconsistency was bothersome and calls into question Claimant's overall veracity. In addition, this [WCJ] questions the assertion of Claimant that he was not sure he could return to work in a job that involved answering phones (Id. at 52) given that [Claimant's Orthopedist], one of Claimant's own medical experts testified that Claimant was able to work in a sedentary to light duty capacity initially part time and then progressing to full time. (Fras [Dep., 3/11/15] at 31-32). Again, to this [WCJ], the assertion of Claimant seemed, at best, inconsistent with the opinion of his own medical expert, and at worst, an embellished representation made to this [WCJ] as to his alleged ongoing disability. As such, to

11

the extent that the testimony of Claimant conflicts with or is material [sic] different from any of the other witnesses who testified in this matter, the testimony of Claimant is rejected as less than credible and not reliable.

b. This [WCJ], having carefully considered and reviewed the deposition testimony of [Dr. Sexton] in the context of the Review Petition filed by Claimant and the Termination Petition filed by Employer, finds the testimony and opinions of Dr. Sexton to be competent, but only credible in part. Specifically, this [WCJ] credits the opinions expressed by Dr. Sexton as to the fact that Claimant had a normal MRI of the lumbar spine from 2012 (Sexton [Dep., 3/30/15] at 10-12) and there was also a normal bone scan from December 12, 2012. This fact comports with the comments of [Employer's Orthopedist] and [Claimant's Orthopedist] that the earlier MRI from September 2012 of the low back was read as normal. (See Schmidt [Dep., 12/1/14] at 18 and Fras [Dep.] at 28). In light of this, this [WCJ] credits the opinion of Dr. Sexton that, at least as of the date he evaluated Claimant that he saw no role in operating on someone's normal lumbar spine. (Sexton [Dep.] at 14). This [WCJ] did not find the opinion of the Doctor concerning his diagnosis of left hip piriformis syndrome and left hip meralgia paresthetic to be particularly credible in this dispute. Here[,] the Doctor acknowledged that this diagnosis was based primarily on Claimant's subjective complaints. (Id. at 12). In the view of this [WCJ], the foundation of that diagnosis is therefore premised upon the veracity of Claimant's report of symptoms. As noted by this [WCJ] above, the overall veracity of Claimant is not reliable, which in turn undermines the foundation upon which the Doctor relied. In addition, this [WCJ] noted that both [Employer's Orthopedist] and one of Claimant's own medical experts that he presented, i.e., [Claimant's Orthopedist], both testified that Claimant did not have left hip piriformis syndrome and were completely silent as to left hip meralgia paresthetic. In addition, this [WCJ] found the explanation of [Employer's Orthopedist] concerning the testing that would be done for diagnosing piriformis syndrome to be more persuasive, i.e., a positive EMG

12

study. Here, however, even Dr. Sexton acknowledged that the available EMG study that he reviewed was normal. (Sexton [Dep.] at 7). <u>Given these factors, this [WCJ] rejects the opinions of Dr. Sexton relative to the diagnosis of left hip piriformis syndrome or left hip meralgia paresthetic to be less than credible and not persuasive</u>.

c. <u>This [WCJ], having carefully considered and reviewed the deposition testimony of [Claimant's Orthopedist] in the context of the Review Petition filed by Claimant and the Termination Petition filed by Employer, finds the testimony and opinions of and [Claimant's Orthopedist] to be competent, but less than credible or persuasive in the instant dispute and or insufficient to meet Claimant's burden of proof to expand the description of the August 22, 2012 work injury</u>. First, with respect to a number of the alleged additional diagnoses that Claimant seeks to include as related to the August 22, 2012 work incident, the testimony of the Doctor is insufficient to support expanding the description of injury to include trochanteric bursitis, thigh strain, groin strain and failed back syndrome. <u>This [WCJ] notes that [Claimant's Orthopedist] rendered no opinion as to whether Claimant had these diagnoses. With respect to the diagnosis of piriformis syndrome, the Doctor expressly testified that Claimant did not have this condition</u>. (Fras [Dep.] at 36). The diagnosis that the Doctor had made, at least as of the last visit he had with Claimant during November 2014, was lumbar disc herniation and aggravation of lumbar degenerative disc disease and that the August 22, 2012 work event was a substantial contributing factor to these conditions. <u>When reviewing the evidence as a whole and considering all the testimony together, this [WCJ] does not find the causal nexus [Claimant's Orthopedist] draws between his diagnosis and the August 22, 2012 work event to be particularly credible</u>. First, even [Claimant's Orthopedist] acknowledged that the MRI from September 13, 2012, about a month after the work event, was normal/unremarkable. The Doctor had not seen Claimant until more than a year after the work incident and only after Claimant had a period of time where he had returned to work and then again stopped working,

13

i.e., after the period from January 2013 through July 2013. In addition, the Doctor agreed that he had never actually seen the film from the 2012 MRI (Fras [Dep.] at 40). In addition, the Doctor was, at best, only able to testify that the disc herniation had occurred sometime after the August 22, 2012 work incident. (Fras [Dep.] at 46). Finally, this [WCJ] also weighed the fact that the evidence and testimony presented in this dispute revealed that an EMG done in 2012 was also normal. (See Sexton [Dep.] at 13). Given the foregoing factors, this [WCJ] does not find the opinions expressed by and [Claimant's Orthopedist] concerning any causal nexus between the August 22, 2012 work incident and the diagnosis that he has provided to be credible.

d. This [WCJ], having carefully considered and reviewed the deposition testimony of [Claimant's Physician] in the context of the Review Petition filed by Claimant and the Termination Petition filed by Employer, finds the testimony and opinions of [Claimant's Physician] to be competent, but less than credible with respect to his diagnosis of left piriformis syndrome and meralgia paresthetic. In the view of this [WCJ], the foundation of that diagnosis is premised upon the veracity of Claimant's report of symptoms. As noted by this [WCJ] above, the overall veracity of Claimant is not reliable, which in turn undermines the foundation upon which the Doctor relied. In addition, this Judge noted that both [Employer's Orthopedist] and one of Claimant's own medical experts that he presented, i.e., [Claimant's Orthopedist], both testified that Claimant did not have left hip piriformis syndrome and was completely silent with respect to any diagnosis of left hip meralgia paresthetic. This [WCJ] also weighed, in making this credibility determination, the relative expertise of the medical witnesses who testified. Here, [Claimant's Physician] is only Board Certified in family practice, sports medicine and emergency medicine, whereas both [Employer's Orthopedist] and [Claimant's Orthopedist] are Board Certified orthopedic surgeons. On the issue of piriformis syndrome and meralgia paresthetic, this [WCJ] was more impressed with the opinions and testimony of the Board Certified orthopedic surgeons and especially

14

the explanation provided by [Employer's Orthopedist] as to the requisite diagnostic study needed to confirm piriformis syndrome. In addition, this [WCJ] did not find the opinion of the Doctor that Claimant had sciatica that was related to the August 22, 2012 work incident to be credible. In this respect, this [WCJ] weighed the fact that there was a normal EMG and a normal MRI from 2012. In the mind of this [WCJ], and in the context of the credible explanations provided by [Employer's Orthopedist] as to the import of these normal studies, this [WCJ] simply did not believe the opinion of [Claimant's Physician] that there was a causal nexus between this diagnosis and the August 22, 2012 work incident. Given the foregoing factors, this [WCJ] does not find the opinions expressed by [Claimant's Physician] concerning any causal nexus between the August 22, 2012 work incident and the diagnosis that he has provided to be credible.

e. This [WCJ], having carefully considered and reviewed the deposition testimony of [Employer's Orthopedist] in the context of the Review Petition filed by Claimant and the Termination Petition filed by Employer, finds the testimony and opinions of [Employer's Orthopedist] to be competent and credible. In the view of this [WCJ], the testimony and opinions expressed by [Employer's Orthopedist] were straight forward and unshaken upon cross examination. Further, the diagnosis provided by [Employer's Orthopedist] as to the nature of the August 22, 2012 work injury, i.e., a left thigh and lower back strain (Schmidt [Dep.] at 18) appeared to this [WCJ] to be more consistent with the diagnostic studies that had been done at or in close proximity to the original work event in 2012. To this [WCJ], [Employer's Orthopedist] better explained his rationale as to why he came to the conclusions he did with respect to the nature of the 2012 work injury. Specifically, the MRI that was done on September 13, 2012 was normal. Even [Claimant's Orthopedist], [Claimant's Physician], and Dr. Sexton agreed to this fact. Further, the EMG and bone scan done early in this case were also normal. When weighing all the evidence and medical testimony presented, this [WCJ] was simply more persuaded by the opinion of

15

[Employer's Orthopedist] as to the nature of the August 22, 2012 work injury and whether the 2012 injury necessitated surgical intervention (Schmidt [Dep.] at 30) than any of the other witnesses presented in this dispute. Likewise, this [WCJ] found the testimony of [Employer's Orthopedist] that Claimant did not suffer from piriformis syndrome to be credible. He specifically pointed to the type of diagnostic testing that would need to be abnormal to establish this diagnosis. In this matter, [Employer's Orthopedist] noted that these tests were done and they were normal. (Schmidt [Dep.] at 24-28). <u>Based upon the foregoing factors, this [WCJ] accepts the testimony and opinions expressed by [Employer's Orthopedist] as to the nature of the August 22, 2012 work injury and the fact that as of July 30, 2014, Claimant had recovered from this injury</u>.

F.F. No. 17(a)-(e).

Claimant challenges each of the above credibility determinations. He acknowledges that the WCJ set forth detailed reasons for his acceptance or rejection of each item of evidence. Considered in a vacuum, Claimant argues, each individual "reason" may seem valid. Pet'r's Br. at 13. Indeed, Claimant contends, even "observation and demeanor" based reasons were set forth, which are recognized as a valid exercise of the WCJ's authority. Id. However, Claimant asserts, it is the overall scheme of the WCJ's findings, in comparison to the record as a whole, and the overwhelming weight of the evidence, which render the decision erroneous. Claimant maintains that while no single error may cause this Court to reverse the WCJ's decision, the combination of errors taken together is what should be determinative. We disagree.

16

First, as to the WCJ's rejection of Claimant's testimony, because Claimant testified live before the WCJ, the WCJ was permitted to base his credibility determination regarding Claimant solely on demeanor. Daniels. The WCJ did so here. F.F. No. 17(a). Moreover, the record supports the WCJ's additional reasons for rejecting Claimant's testimony.

To that end, as the WCJ found, the record discloses inconsistencies in Claimant's case. First, as the WCJ explained, Claimant completed an "Employee Report of Wages and Physical Condition" Form (LIBC-750) and an "Employee Verification of Employment, Self-Employment or Change in Condition" Form (LIBC-760), in which he indicated he was not employed or self-employed at any time while receiving workers' compensation benefits. Reproduced Record (R.R.) at 324-25, 328-29. Before the WCJ, Claimant acknowledged he attempted to start a business as far back as 2009, and Employer presented an "Independent Associate Agreement" Claimant executed with TVC Marketing Associates in 2014 as well as a computer printout from 2014 relating to another business venture attempted by Claimant. R.R. at 214, 319, 330. Although Claimant asserted he generated no income from these undertakings, as the WCJ found, when asked if he ever filed business tax returns, Claimant responded: "No. The only thing I ever did with that business was claim the stuff that I was trying to get it running, like a computer, you know, like a --- we took the write off for a home office basically. That's all I ever did." R.R. at 215. Thus, as the WCJ found, these facts were inconsistent because, on the one hand, in November 2014, Claimant completed Bureau of Workers' Compensation Forms on which he indicated he was not employed or self-employed *at any time* while receiving workers' compensation benefits (despite receiving

17

indemnity and/or medical benefits from August 2012 through July 2014), while, on the other hand, Claimant made a claim to the Internal Revenue Service that there were business tax deductions, *i.e.*, a computer and writing off a home office. F.F. No. 17(a).

In addition, the WCJ determined Claimant's testimony that he was "not sure" that he could return to a job that involved answering phones was inconsistent with Claimant's Orthopedist's opinion that Claimant could perform sedentary to light duty work beginning part-time and progressing to full-time employment, if tolerated on a part-time basis. Compare R.R. at 234 (Claimant's testimony) with R.R. at 124-25 (Claimant's Orthopedist's testimony). In short, because the record supports the WCJ's findings regarding these inconsistencies, we discern no error in these additional bases for the WCJ's rejection of Claimant's testimony.

Further, as to the WCJ's credibility determinations concerning the medical evidence, the record supports the WCJ's findings that:

- Dr. Sexton opined Claimant had a normal MRI in 2012 as well as a normal bone scan from December 2012. R.R. at 252-254, 256. This opinion was consistent with the testimony of [Employer's Orthopedist] and [Claimant's Orthopedist] that the 2012 MRI of the low back was read as normal. R.R. at 120, 279.

- As a result, Dr. Sexton credibly opined that, at least as of the date he evaluated Claimant he saw no role in operating on someone's normal lumbar spine. R.R. at 256.

18

- Dr. Sexton's diagnoses of left hip piriformis syndrome and left hip meralgia paresthetic were not credible in light of his acknowledgment that these diagnoses were based primarily on Claimant's subjective complaints, R.R. at 254, and the WCJ did not find Claimant credible, F.F. No. 17(a), which, in turn, undermined the foundation on which Dr. Sexton relied.

- Both Employer's Orthopedist and Claimant's Orthopedist agreed Claimant did not have left hip piriformis syndrome and were completely silent as to left hip meralgia paresthetic. R.R. at 129, 285, 289. In addition, the WCJ was persuaded by Employer's Orthopedist's explanation regarding the testing that would be performed in order to diagnose piriformis syndrome, i.e., an EMG study. R.R. at 285. Here, however, even Dr. Sexton acknowledged the EMG study he reviewed on Claimant was normal. R.R. at 255.

- Thus, the WCJ rejected Dr. Sexton's diagnoses of left hip piriformis syndrome and left hip meralgia paresthetic. F.F. No. 17(b).

- Claimant's Orthopedist rendered no opinion as to whether Claimant had trochanteric bursitis, thigh strain, groin strain and failed back syndrome. R.R. at 94-182.

- Claimant's Orthopedist expressly testified Claimant did not have piriformis syndrome. R.R. at 129.

- Claimant's Orthopedist's opinions that Claimant suffered a lumbar disc herniation and aggravation of lumbar degenerative disc disease and that the August 22, 2012 work event was a substantial contributing factor to these conditions was not credible where: Claimant's Orthopedist acknowledged the September 2012 MRI report, about a month after the work incident, was unremarkable, R.R. at 120; Claimant's Orthopedist did not see Claimant until more than a year after the work incident and only after the period in which Claimant returned to work and then stopped working again (January 2013 through July 2013), R.R. at 101; Claimant's Orthopedist never saw the film of the 2012

19

MRI, R.R. at 133; and, at best, Claimant's Orthopedist could testify the disc herniation occurred sometime after the August 2012 work incident. R.R. at 139.

- Claimant's Physician's opinions that Claimant suffered from left piriformis syndrome and meralgia paresthetic were not credible given that those diagnoses were premised on the veracity of Claimant's report of symptoms, and the WCJ did not find Claimant credible, F.F. No. 17(a).

- Both Employer's Orthopedist and Claimant's Orthopedist opined Claimant did not have left hip piriformis syndrome and were completely silent as to any diagnosis of left hip meralgia paresthetic. R.R. at 129, 285, 289.

- Claimant's Physician is board certified in family practice, sports medicine and emergency medicine, whereas both Employer's Orthopedist and Claimant's Orthopedist are board certified orthopedic surgeons. R.R. at 29, 99, 266-67. Thus, as to the issues of piriformis syndrome and meralgia paresthetic, the WCJ was more persuaded by the opinions of the board certified orthopedic surgeons and especially the explanation provided by Employer's Orthopedist as to the requisite diagnostic study needed to confirm piriformis syndrome. R.R. at 286, 289.

- Claimant's Physician's diagnosis of sciatica, which he opined was related to the August 2012 work incident, was not credible based on the normal EMG and MRI studies from 2012. R.R. at 279.

- The testimony and opinions of Employer's Orthopedist were straightforward and unshaken on cross examination, R.R. at 265-95.

- Employer's Orthopedist's diagnosis as to the nature of the August 2012 work injury, a left thigh and lower back strain, R.R. at 279, was consistent with diagnostic studies performed at or in close proximity to the original 2012 work incident.

20

- Employer's Orthopedist better explained his rationale as to why he came to the conclusions he did regarding the nature of the 2012 work injury. To that end, the September 2012 MRI was normal. R.R. at 275-76. Claimant's Orthopedist, Claimant's Physician, and Dr. Sexton agreed to this fact. R.R. at 55, 120, 256. Further, the EMG and bone scan performed early in this case were also normal. R.R. at 276-77.

- Employer's Orthopedist credibly opined Claimant did not suffer from piriformis syndrome based on his explanation as to the type of diagnostic testing that would need to be abnormal to establish this diagnosis. R.R. at 286. Here, Employer's Orthopedist noted these tests were performed and were normal. R.R. at 285-89.

In sum, because the record amply supports the WCJ's bases for his credibility determinations, we cannot disturb them. Clearly, the WCJ's decision satisfies the reasoned decision requirements of Section 422(a) of the Act, and the WCJ did not capriciously disregard the evidence Claimant presented.[5]

Nevertheless, Claimant cites Giant Eagle, Inc. v. Workmen's Compensation Appeal Board (Bensy), 651 A.2d 212 (Pa. Cmwlth. 1994), for the

---

[5] Claimant also very briefly asserts that, even assuming the surgery he underwent was unnecessary, the WCJ capriciously disregarded his argument that unnecessary treatment is still compensable if it would not have been undertaken "but for" the work injury. He cites J.D. Landscaping v. Workers' Compensation Appeal Board (Heffernan), 31 A.3d 1247 (Pa. Cmwlth. 2011), in support. In J.D. Landscaping, this Court determined that a utilization review determination that certain medication prescribed to a decedent was unreasonable and unnecessary was irrelevant to determining whether the decedent's death, which occurred because of an overdose of the medication, was causally related to his work injury. In J.D. Landscaping, the WCJ determined that the decedent's death was causally related to an accidental overdose of pain medication that was prescribed for the decedent's work-related back injury. Unlike in J.D. Landscaping, the WCJ here *rejected* Claimant's medical evidence, which indicated that Claimant's August 2012 work incident and work thereafter, were substantially contributing factors to Claimant's need for surgery. F.F. Nos. 17(b)-(c).

proposition that a WCJ's decision is erroneous where a "patchwork of findings together" results in credibility determinations that are illogical. Pet'r's Br. at 12. In Giant Eagle, this Court recognized that: "Where [a WCJ's] opinion is without a rational basis or scheme so as to be capricious, we are bound to reverse." Id. at 218. Noting that an opinion would rarely meet those criteria, this Court explained the particular circumstances under which the case arose:

> The [WCJ] failed to set forth any findings of fact with respect to the medical witnesses who testified. Instead, he inexplicably states that he finds the direct testimony of all of these witnesses as being not believable and not credible and picks and chooses as to the credibility of parts of testimony of other witnesses with no rhyme or reason. The [WCJ] found that he does believe the cross-examination testimony of Dr. Durning and Dr. Merkow, despite the fact that there are very few relevant facts contained in these portions of the testimony. In essence, we can make no sense of the patchwork of credibility findings as to portions of each individual's testimony. Not only do the [WCJ's] credibility findings make no sense, neither does his award: reinstatement of [the] [c]laimant's weekly benefits when none was requested; ordering the payment of some medical benefits without delineating which ones; awarding travel expenses without having any evidence to make that determination other than [the] [c]laimant's testimony that he wanted to be reimbursed for money spent travelling 20,000 miles to see Dr. Merkow. We believe the findings are so capricious that no reasonable person could have made such findings of fact or conclusions of law. While the Board attempted to mitigate by reversing some of the decision's more egregious errors, the findings tainted all aspects of the [WCJ's] decision. As such, we find the decision below, as well as the bases for that decision, to be generally not rational or intelligible.

Id. (footnote omitted).

22

The case presently before us is not akin to Giant Eagle. As explained above, the WCJ here provided sufficient reasons for his credibility determinations, and those reasons are supported by the record. Further, the WCJ made detailed findings as to each witness's testimony. Ultimately, the WCJ considered the conflicting evidence, and he credited the evidence presented by Employer over that presented by Claimant. This is a proper function of the WCJ as fact-finder. A & J Builders. Thus, we reject Claimant's argument that the WCJ's opinion lacks a rational basis.[6]

Finally, we reject Claimant's argument that Employer's Orthopedist's testimony was incompetent on the ground it was based on a "completely deficient factual predicate." Pet'r's Br. at 31. Contrary to Claimant's assertions, Employer's Orthopedist's difference of opinion as to the legitimacy of a medical condition or diagnosis, and the WCJ's acceptance of one medical expert's opinion over that of another cannot serve as a basis for reversible error. Jenkins v. Workmen's Comp. Appeal Bd. (Woodville State Hosp.), 677 A.2d 1288 (Pa.

---

[6] Similarly, Higgins v. Workers' Compensation Appeal Board (City of Philadelphia), 854 A.2d 1002 (Pa. Cmwlth. 2004), also cited by Claimant, is distinguishable. There, a WCJ denied a claimant's modification and reinstatement petitions seeking total disability benefits, despite the fact the claimant presented the competent medical testimony of one physician who opined the claimant was totally disabled as well as a report of another physician who confirmed this opinion. The employer offered no medical evidence to rebut the opinions of the claimant's medical experts. This Court determined the WCJ's rationale for rejecting the claimant's medical testimony lacked record support, and the WCJ articulated no reason for rejecting the report of the claimant's other physician. Based on these clear deficiencies, we determined the WCJ's decision did not satisfy the reasoned decision requirement.

Here, unlike in Higgins, the parties presented conflicting medical evidence on the issues raised in the termination and review petitions. The WCJ chose to credit the testimony of Employer's Orthopedist over that presented by Claimant's medical experts and properly articulated objective reasons for doing so, which are amply supported by the record. Therefore, Higgins is inapposite here.

23

Cmwlth. 1996). Moreover, the fact that a medical expert did not have all of a claimant's medical records goes to the weight of the evidence, not its competency. Marriott Corp. v. Workers' Comp. Appeal Bd. (Knechtel), 837 A.2d 623 (Pa. Cmwlth. 2003).

Here, based on a physical examination, the history Claimant provided and his review of medical records and diagnostic studies, Employer's Orthopedist opined, within a reasonable degree of medical certainty, that Claimant suffered a left thigh and lower back strain from which he fully recovered. F.F. No. 8(g); R.R. at 279-81. Employer's Orthopedist further opined Claimant did not require any additional medical treatment as a result of this work injury. F.F. No. 8(g); R.R. at 280. Claimant's arguments regarding the purported incompetency of Employer's Orthopedist's testimony and opinions go to the weight of the evidence, not its competency, a matter within the WCJ's discretion as fact-finder.

Further, this is not a case like City of Philadelphia v. Workers' Compensation Appeal Board (Kriebel), 29 A.3d 762 (Pa. 2011), cited by Claimant. In Kriebel, our Supreme Court held that an employer's medical expert's opinion testimony was insufficient to rebut a statutory presumption of disease causation where the expert's opinion was based on a "series of unsubstantiated assumptions[,]" stemming from a single notation in a 30-year old medical record. Id. at 771. The medical expert based his entire opinion, that the decedent, a firefighter, contracted Hepatitis C through drug use rather than during his employment, on facts that were not warranted by the record, rendering his opinion "nothing but conjecture and speculation[,]" and, therefore, incompetent. Id. at 772.

24

Here, unlike in <u>Kriebel</u>, Employer's Orthopedist based his opinions on the history Claimant provided, his review of medical records and diagnostic studies and a physical examination. Unlike the expert in <u>Kriebel</u>, Employer's Orthopedist's opinion testimony was not based on a series of unsubstantiated assumptions, but rather on facts that are supported by the record.[7]

## B. Litigation Costs

Claimant next asserts the WCJ awarded litigation costs based on the WCJ's decision to modify the description of the work injury. However, the Board reversed that award based on the fact that Employer voluntarily amended the injury description in its answer to Claimant's review petition. Despite the Board's determination, Claimant argues, he was required to file his review petition and "depose one or more experts" before Employer agreed to amend the description of the injury. Pet'r's Br. at 34. At a minimum, Claimant maintains, all costs incurred before the date Employer filed its answer were properly awarded. Nevertheless, he argues, Employer required him to fully litigate the review petition; as a result, the WCJ properly awarded *all* costs, and the Board erred in reversing that decision.

---

[7] Further, Claimant's brief reference to <u>Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)</u>, 962 A.2d 14 (Pa. Cmwlth. 2008), is puzzling. In that case, we rejected the claimant's argument that an employer's medical expert's testimony was incompetent and could not support a termination of benefits where the claimant's arguments went merely to the credibility of the witness and not the competency of the witness's testimony. Absent further explanation, we fail to see how <u>Casne</u> aids Claimant's argument here.

Section 440(a) of the Act, 77 P.S. §996(a),[8] authorizes an award of litigation costs to a claimant who prevails in whole or in part. That Section states, in relevant part (with emphasis added):

> In any <u>contested case</u> where the insurer has contested liability in whole or in part … the employe[e] … in whose favor the matter at issue has been finally determined in whole or in part shall be awarded, in addition to the award for compensation, a reasonable sum for costs incurred for … witnesses, necessary medical examination, and the value of unreimbursed lost time to attend the proceedings ….

<u>Id.</u>

"This Court has consistently held that a claimant must prevail <u>on the contested issue</u> in order to be awarded litigation costs." <u>Reyes v. Workers' Comp. Appeal Bd. (AMTEC)</u>, 967 A.2d 1071, 1078 (Pa. Cmwlth. 2009) (<u>en</u> <u>banc</u>) (quoting <u>Jones v. Workers' Comp. Appeal Bd. (Steris Corp.)</u>, 874 A.2d 717, 721 (Pa. Cmwlth. 2005)).

Here, the WCJ awarded litigation costs on the ground that Claimant was successful, in part, on his review petition. Specifically, although the WCJ granted Employer's termination petition and denied Claimant's review petition to the extent Claimant sought to expand the description of the recognized work injury to include trochanteric bursitis, piriformis syndrome, groin strain, herniated disc, lumbar radiculopathy and/or failed back syndrome, the WCJ *did* expand the injury description to include a left thigh strain.

---

[8] Section 440 was added by the Act of February 8, 1972, P.L. 25, <u>as</u> <u>amended</u>.

However, as the Board correctly determined, the issue of whether the description of Claimant's injury should be amended to include a left thigh strain was *not contested* before the WCJ. Indeed, in its answer to Claimant's review petition, Employer expressly agreed to expand the description of the injury to include a left thigh strain. R.R. at 17. Also, Employer did not contest the left thigh strain in the litigation before the WCJ. Indeed, Employer's Orthopedist expressly opined that Claimant's work injury included a left thigh strain. R.R. at 279. Further, despite seeking to amend the injury description to include a left thigh strain, none of Claimant's medical experts opined that Claimant had such an injury. Additionally, contrary to Claimant's argument, none of Claimant's medical experts were deposed prior to the date Employer filed its answer to Claimant's review petition. Indeed, Employer filed its answer to Claimant's review petition on the same date Claimant filed the review petition. R.R. at 11-15, 16-19.

In short, because Claimant did not prevail on any issue that was contested in the litigation before the WCJ, he was not entitled to litigation costs. See Reyes (where claimant did not prevail on any disputed issue, he was not entitled to litigation costs); see also Watson v. Workers' Comp. Appeal Bd. (Special People in the Northeast), 949 A.2d 949 (Pa. Cmwlth. 2008) (same). As such, the Board correctly reversed the WCJ's award of litigation costs.

Based on the foregoing, we affirm the order of the Board.[9]

ROBERT SIMPSON, Judge

---

[9] Claimant also asserts the Board capriciously disregarded his argument that the proceedings on the termination and review petitions at issue here should have been consolidated with Claimant's claim petition (alleging an aggravation of his August 2012 work injury) in order to permit consideration of all evidence and arguments in the proper context and to avoid inconsistent outcomes. However, our review of Claimant's appeal to the Board reveals Claimant did not raise this issue to the Board. R.R. at 360-68. Thus, it is not surprising that the Board did not address this issue in its opinion. As such, this issue is waived. See McGaffin v. Workers' Comp. Appeal Bd. (Manatron, Inc.), 903 A.2d 94 (Pa. Cmwlth. 2006).

In any event, even if not waived, a WCJ's decision as to whether to consolidate related actions is discretionary, not mandatory. 34 Pa. Code §131.30(a) ("Where proceedings involve a common question of law or fact, the judge may consolidate the proceedings for hearing on all matters in issue, and may make any appropriate orders concerning the conduct of the proceedings to avoid any unnecessary costs or delay."). Here, the WCJ denied Claimant's oral motion to consolidate the proceedings on Claimant's claim petition with the proceedings on Employer's termination petition and Claimant's review petition because consolidation would delay the proceedings on Employer's termination petition. Certified Record, WCJ's Hr'g, Notes of Testimony, 2/9/15, at 8. In his brief to this Court, Claimant offers no direct response to the WCJ's decision to deny his request for consolidation on this basis.

In addition, Claimant requests a remand for consideration of his review petition and Employer's termination petition by a different WCJ based on his argument above that the WCJ's decision contained "significant omissions" and that the WCJ "ignored inconsistencies" and showed a "misapprehension of the reasons why [C]laimant presented certain evidence." Pet'r's Br. at 36. To that end, Claimant again argues the WCJ's decision contains a "SCHEME of credibility determinations that are inconsistent with the overwhelming weight of the evidence and inescapably tainted by a distorted concept of the evidentiary record as a whole." Id. Because, as explained above, the WCJ adequately explained the bases for his credibility determinations and those bases are amply supported by the record, we reject Claimant's request for remand to a different WCJ.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Terrinoni,                          :
                  Petitioner      :
                                :
          v.                          :   No. 1792 C.D. 2016
                                :
Workers' Compensation Appeal           :
Board (Wawa, Inc.),                         :
                Respondent      :

## **O R D E R**

     **AND NOW**, this 4th day of April, 2017, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

                                      _____

                                      ROBERT SIMPSON, Judge